**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| MAYOR & CITY COUNCIL OF BALTIMORE,<br><br>Plaintiff,<br><br>v.<br><br>MONEYLION TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 1:25-cv-3692<br><br>Removed from the Circuit Court for Baltimore City, Maryland<br>Case No. C-24-CV-25-008340 |

**NOTICE OF REMOVAL**

Defendant MoneyLion Technologies Inc. ("MoneyLion" or "Defendant"), through its undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, hereby files this Notice of Removal from the Circuit Court for Baltimore City, Maryland, to the United States District Court for the District of Maryland, Northern Division. In support of this Notice of Removal, Defendant states as follows:

**INTRODUCTION**

1. MoneyLion offers Instacash Advances, an earned-wage-access ("EWA") product that allows customers to obtain early access to wages that they have already earned—without interest, credit checks, or any obligation to repay. Instacash is designed as a responsible, low-cost alternative to payday loans and other high-cost credit products that often trap working people in cycles of debt. Instacash exemplifies the kind of innovative financial service that Maryland has chosen to encourage for its citizens. Indeed, Maryland has specifically recognized the value of EWA products like Instacash, recently promulgating a comprehensive scheme to regulate them. As Governor Wes Moore explained regarding the new regulatory scheme, "Earned wage access

(EWA) products can undoubtedly provide a tangible benefit to workers" faced with unexpected expenses, offering them a way to, for example, "replace a flat tire, pay a medical co-pay, afford a veterinarian bill, and so on."[1]

2. The City of Baltimore has apparently decided that it knows better than the Maryland legislature. The same day that Maryland's new regulatory scheme went into effect, the Mayor and City Council of Baltimore (the "City," "Baltimore," or "Plaintiff") brought this suit, purportedly under the Baltimore Consumer Protection Ordinance, claiming that Instacash and other EWA products offered throughout Maryland are unfair and deceptive and demanding that MoneyLion return all principal, fees, and tips on any Instacash advances issued to Baltimore residents. In bringing this suit, the City seeks to deprive its citizens of products that Maryland has not only permitted but sanctioned.

3. MoneyLion now removes this suit to federal court on two grounds. This Court has diversity jurisdiction. There is complete diversity between Baltimore, a Maryland resident, and MoneyLion, a Delaware and New York resident. And the amount-in-controversy is well above $75,000, as Baltimore has sought significant penalties and expansive injunctive relief.

4. This Court also has federal-question jurisdiction. The City, although funneling its claims through the Baltimore Consumer Protection Ordinance, really alleges violations of the federal Truth in Lending Act ("TILA"). The federal issues in this suit are significant—the interpretation of TILA is necessarily raised, actually disputed, and substantial, and this Court interpreting a federal statute will not disrupt any balance between state and federal courts.

[1] Letter from Office of the Governor Wes Moore to the Honorable Adrienne A. Jones, Speaker of the House of Delegates (May 20, 2025), https://tinyurl.com/5xn8czvb.

## FACTUAL BACKGROUND

5. MoneyLion is a financial technology company offering a range of products, services, and tools to people who are often underserved by banks and traditional financial institutions. This case focuses on Instacash, MoneyLion's popular EWA product. EWA is an alternative to credit cards and payday loans that allows customers, upon showing proof of income, to get early access to their already-earned wages. *See* Compl. ¶¶ 1, 15, 19 & n.2.

6. The Instacash process is easy: Customers link their bank account, and MoneyLion approves them for Instacash based on whether it can detect recurring wages. Compl. ¶¶ 2, 19 & n.2, 26. Customers can generally seek advances of up to $100 at a time, for a total of $500 in advances between paychecks. Compl. ¶¶ 6, 16, 62.

7. There is never any interest, and Instacash is always available to customers at no cost. There is no delivery fee for standard delivery, which takes one to five business days, given processing times for automated clearing house ("ACH") transactions. Compl. ¶ 35.

8. Customers who seek access to their earned wages sooner can pay an optional "Turbo" fee for expedited delivery within minutes. Compl. ¶ 34. This feature is like expedited fund transfers offered by other popular financial-technology services, or like paying for expedited shipping from an online retailer instead of waiting longer with free shipping. Maryland customers previously also had the option to leave a voluntary tip to express appreciation for Instacash's otherwise-free service; MoneyLion has since discontinued tips in the state. Compl. ¶¶ 39, 43. Those tips were optional and had no bearing on the customer's future eligibility for Instacash. Compl. ¶ 35, 39, 43, 47, 50.

9. Repayment is also easy: Instacash customers authorize MoneyLion to debit their checking account in the amount of the advance, along with any optional Turbo fee or optional tip,

on a scheduled repayment date, typically the day when customers receive a direct deposit from their employer. Compl. ¶ 26. Customers that do not intend to repay the advance can cancel the repayment; the sole consequence is that MoneyLion will not approve the customer for a new advance until the prior advance is repaid. Compl. ¶¶ 25, 31(a).

10. As MoneyLion makes clear in its terms and conditions and other customer-facing documents, Instacash does not impose any mandatory fees or interest. MoneyLion does not conduct a credit check for Instacash, and it does not report any information to credit bureaus. And customers have no obligation to pay back the advance. If they choose not to do so, MoneyLion has no legal claim against the customer, and MoneyLion does not send anything to debt collectors.

11. Maryland—recognizing the value that EWA products have for workers—has enacted a comprehensive regulatory framework for EWA products that went into effect on October 1, 2025. HB1294, to be codified at Md. Com. L. §§ 12-101, 12-128, 12-301, 12-318 to 12-319, 12-1501 to 12-1507. MoneyLion offers Instacash in compliance with those statutory requirements.

## PROCEDURAL HISTORY

12. On the same day that Maryland's EWA law went into effect, the City filed this suit against MoneyLion in the Circuit Court for Baltimore City, Maryland, No. C-24-CV-25-008340. Baltimore asserts that despite the Maryland legislature's explicit sanctioning of EWA products, Instacash is a deceptive and unfair product.

13. The Complaint includes two counts. In Count I, Baltimore alleges that MoneyLion has engaged in deceptive trade practices by misrepresenting the features of Instacash and purportedly operating without a lender license. In Count II, Baltimore alleges that MoneyLion has violated the federal Truth in Lending Act, by issuing "credit" products without providing federally required disclosures.

14. Baltimore styles both of its counts as arising under the City's new Consumer Protection Ordinance (the "Ordinance"), passed in 2023. Baltimore City Code Art. 2, § 4. The Ordinance incorporates Maryland's Consumer Protection Act (the MCPA). Md. Code Ann., Com. Law, § 13-301. The MCPA, in turn, references the Federal Trade Commission Act. Com. Law, § 13-105; *see* Compl. ¶¶ 82, 97.

**GROUNDS FOR REMOVAL**

15. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

16. This Court has both diversity jurisdiction and federal-question jurisdiction. Removal is thus proper.

## I. DIVERSITY JURISDICTION

17. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

18. Diversity jurisdiction requires that there exists complete diversity between the plaintiff and the defendant, that the defendant not be a citizen of the forum state, and that the amount in controversy exceed $75,000. Each of those requirements is met here.

### A. Complete Diversity Exists Between the Parties, and MoneyLion Is Not a Citizen of Maryland.

19. The City is a citizen of Maryland. Compl. ¶ 10; *see, e.g.*, *Mayor & City of Baltimore v. CSX Transp., Inc.*, 404 F. Supp. 2d 869, 870 (D. Md. 2005).

20. Defendant MoneyLion Technologies Inc. is a Delaware corporation with its principal place of business in New York. Compl. ¶ 11. MoneyLion is thus a citizen of Delaware and New York. *See* 28 U.S.C. § 1332(c)(1).

21. The parties are completely diverse. And MoneyLion is not a citizen of Maryland, the forum state.

**B. The Amount in Controversy Exceeds $75,000.**

22. The amount-in-controversy in this dispute readily exceeds $75,000.

23. MoneyLion has thousands of customers in Baltimore, and it has issued numerous advances to those customers. **Exhibit A**, Gomez Decl. ¶¶ 7-8.

24. Under Maryland rules, the Complaint is required to either state "the amount of damages sought" or represent "that the amount sought exceeds $75,000." Md. R. 2-305. The City has not done so. But the remedies it seeks makes clear that there is over $75,000 at stake in this dispute. *See* **Exhibit B2** (indicating on case information report that monetary damages sought are "[o]ver $100,000").

25. ***First***, Baltimore's Consumer Protection Ordinance provides for a civil penalty of up to $1,000 per violation per day. Baltimore City Code Art. 2, § 4-3(a), (c). The City seeks "the maximum amount of penalties available" under that Ordinance. Compl. at 30, subpart (a); *see id.* ¶¶ 95, 113 (seeking "civil penalties").

26. The City has alleged that "[e]ach fee and tip collected by MoneyLion" in Baltimore "is a separate violation," as is "[e]ach day in which MoneyLion has operated without a license" and "[e]ach misrepresentation and failure to disclose material facts." Compl. ¶¶ 90-93, 110-11.

27. In the last year, MoneyLion has issued Instacash Advances to Baltimore consumers on more than 75 instances and has collected Turbo fees from Baltimore consumers on more than 75 instances. **Exhibit A**, Gomez Decl. ¶¶ 8-9.

28. MoneyLion has operated in Baltimore for more than 75 days. *Id*. ¶ 6.

29. MoneyLion disputes that it committed any violations. But taking the City's allegations on their face, the Complaint asserts more than 75 violations of the Ordinance, resulting in more than $75,000 in alleged penalties.

30. ***Second***, the City seeks "injunctive relief ordering that … Instacash Advances be deemed void and unenforceable, and that MoneyLion return all principal, fees, and tips to Baltimore consumers." Compl. at 30, subpart (c); *see id.* ¶¶ 95, 113 (seeking "restitution[] and disgorgement").

31. In the last year, MoneyLion has advanced more than $75,000 to customers in Baltimore. **Exhibit A**, Gomez Decl. ¶ 8. It has also collected more than $75,000 in fees. *Id.* ¶ 9.

32. Based on this requested injunctive relief alone then, more than $75,000 is at stake.

## II. FEDERAL QUESTION JURISDICTION

33. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331.

34. Federal courts have federal-question jurisdiction over any civil action arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. 1331. This means that, even for claims ostensibly arising under state law, a federal court still has federal-question jurisdiction if the suit raises "substantial" federal questions. *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

35. The City has styled its claims as arising under Baltimore's Consumer Protection Ordinance. But the City is asserting violations of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* *See* Compl. ¶¶ 99-107.

36. In Count II, the City asserts that Instacash Advances are "credit" under TILA and that MoneyLion has failed to disclose certain information to consumers as required by TILA. Compl. ¶¶ 99-106 (Count II).

37. “[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.” *Gunn*, 568 U.S. at 258; *accord Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 209 (4th Cir. 2022). Each of those requirements is satisfied here.

38. Federal questions are necessarily raised because the TILA claim in Count II “hinge[s] on the determination of a federal issue.” *BP P.L.C.*, 31 F.4th at 210 (internal quotation marks omitted); *see Republican National Comm. v. North Carolina State Bd. of Elections*, 120 F.4th 390, 394-95 (4th Cir. 2024). To win on its claim, Baltimore must prove that Instacash Advances are “credit” under TILA, Compl. ¶ 99 (citing 15 U.S.C. § 1602(f)), that MoneyLion is a “creditor” under TILA, *id.* ¶ 100 (citing 15 U.S.C. § 1602(e)-(g), (i)), that MoneyLion failed to accurately disclose “the amount financed,” the “finance charge,” the “annual percentage rate,” and the “total of payments” under TILA, *id.* ¶ 104 (citing 15 U.S.C. § 1638(a)(2), (3), (4), (5)), and that MoneyLion failed to state the finance charge as an APR as required by TILA, *id.* ¶ 105. This claim cannot be resolved without answering those federal questions—and applying federal statutory provisions and interpreting federal caselaw.

39. These federal questions are actually disputed, as the parties vigorously “disagree” about each element of the TILA claim. *BP P.L.C.*, 31 F.4th at 209.

40. These federal questions are substantial. The “classic example” of a substantial federal question is one “regarding the constitutionality or construction of a federal statute.” *Burrell*, 918 F.3d at 385 (internal quotation marks omitted). TILA is a federal statute with national application. And the City’s claim concerns the construction of TILA as applied to MoneyLion’s EWA product. That federal question about the meaning of TILA is “an important issue of federal

law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. Indeed, the application of TILA to EWA products would affect not only MoneyLion's operations across the country, but the entire EWA industry, drastically changing the "federal regulatory regime" for credit products. *Burrell*, 918 F.3d at 385.

41. Exercising federal-question jurisdiction here will not disrupt the federal-state balance. TILA is a federal statute that provides a federal cause of action to harmed consumers—not to cities seeking to recover on their behalf. Maryland courts have no special interest in adjudicating such federal claims, and the City has no "special responsibilit[y]" to enforce such federal laws. *BP P.L.C.*, 31 F.4th at 209 (internal quotation marks omitted). TILA claims can be and are regularly brought in federal court. So there is no "risk" of "enormous disruption to the division of judicial labor," "with a tremendous number of cases shunted from state to federal court." *Burrell*, 918 F.3d at 387 (internal quotation marks omitted). To the contrary, allowing the City to keep its TILA claim in state court would be disruptive, depriving parties fighting over a federal statute of a federal forum and threatening inconsistent rulings between state and federal courts. *See Bauer v. Elrich*, 8 F.4th 291, 297-98 (4th Cir. 2021).

42. To the extent that the City's other claims can be construed as arising under and implicating only state law, this Court has supplemental jurisdiction over those claims, as they form part of the same case or controversy. 28 U.S.C. § 1367(a).

**PROCEDURAL REQUIREMENTS**

43. Venue is appropriate in this Court. For removal, venue is proper in the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Notice of Removal has been filed in the United States District Court for the District of Maryland, Northern Division. The Circuit Court for Baltimore City, Maryland, is located within this District, and cases

arising in the Circuit Court for Baltimore City, Maryland, are properly assigned to the Northern Division of this Court. 28 U.S.C. § 100(1).

44. This Notice of Removal is timely. Removal must be noticed within thirty days of being served. 28 U.S.C. § 1446(b)(1), (b)(2)(B). Defendants were served on October 10, 2025. This Notice of Removal is being filed on November 10, 2025 (Monday). *See* Fed. R. Civ. P. 6(a).

45. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, and true and correct copies of all process, pleadings, and orders served upon Defendants are attached as **Exhibit B**. 28 U.S.C. § 1446(a).

46. A true and correct copy of this Notice of Removal (without exhibits) is being filed contemporaneously with the Clerk of the Circuit Court for Baltimore City, Maryland, and served upon all parties and/or counsel of record. *See* Notice of Filing of Removal, attached as **Exhibit C.** 28 U.S.C. § 1446(d)

47. In filing this Notice of Removal, MoneyLion does not waive, and specifically reserves, any and all objections as to service, personal jurisdiction, defenses, exceptions, rights, and motions. No statement herein or omission shall be deemed to constitute an admission by Defendant of any of the allegations of, or damages sought in, the Complaint.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant MoneyLion Technologies Inc. respectfully requests that this action be, and is hereby, removed to this Court, that this Court assume jurisdiction of this action, and that this Court enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

Dated: November 10, 2025 Respectfully submitted,

*/s/ Melissa O. Martinez*
Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4432
(410) 659-4482 Fax
mmartinez@mcguirewoods.com

*Counsel for Defendant*
*MoneyLion Technologies Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 10, 2025, a copy of the foregoing Notice of Removal, Exhibits, and Civil Cover Sheet was electronically filed via the Court's CM/ECF system and pursuant to counsel's agreement was served by email, on the following:

Ebony M. Thompson, City Solicitor
Sara Gross, Chief Solicitor
Thomas Webb, Chief Solicitor
Christopher Sousa, Chief Solicitor
Zachary Babo, Assistant Solicitor
**BALTIMORE CITY LAW DEPARTMENT**
100 N. Holliday Street
Baltimore, Maryland 21202

E. Michelle Drake
John G. Albanese
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

James Hannaway
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001

*Counsel for Plaintiff*
*Mayor & City Council of Baltimore*

*/s/ Melissa O. Martinez*
Melissa O. Martinez