**EXHIBIT 1**



# MARYLAND COMMISSIONER OF FINANCIAL REGULATION
## INDUSTRY ADVISORY
## REGULATORY GUIDANCE



**August 1, 2023**

## Guidance on Earned Wage Access Products

The Maryland Office of Financial Regulation (OFR) is issuing this guidance to provide clarity on how this Office views Earned Wage Access products and to describe the requirements entities offering these products must adhere to.

### What is an Earned Wage Access product?

Earned Wage Access allows consumers to obtain access to wages that they have earned but not yet received via employer payroll. These products commonly come in two varieties: products employers offer as an employee benefit or products independent third parties offer consumers. In both circumstances, the amount the consumer is offered is limited to the amount they've earned, but not been paid.

An Earned Wage Access product, if offered directly by the employer is usually paid by a deduction from the consumer's wages in the next paycheck. When an independent third party provides the Earned Wage Access product, it is usually repaid via a direct debit from the consumer's bank account.

### One-time or Subscription Earned Wage Products

Earned Wage Access products can also be divided into one-time transactions or subscription-based products depending upon how frequently the consumer obtains the advance. In a one-time transaction, the advance is provided on a non-recurring basis. A subscription product provides a consumer with an advance on a recurring basis.

### How large are the advances under an Earned Wage Access product?

The California Department of Financial Protection and Innovation conducted a survey of Earned Wage Access providers and 80% of transactions in their state were between $40-$100.

### How does Maryland law classify the Earned Wage Access product?

Whether an Earned Wage Access product is classified as a loan or not under Maryland law depends upon certain factors. Since these advances are under $25,000.00, if they are loans, they would fall under Maryland Commercial Law Title 12, Subtitle 3. Under Maryland Commercial Law §12-301 a loan is defined as "any loan or advance of money or credit subject to this subtitle regardless of whether the loan or advance of money is or purports to be made under this subtitle". However, Maryland Commercial Law §12-303(a)3(iii) also stipulates that Subtitle 3 does not apply "to a loan between an employer and an employee". Therefore, if the employer provides the Earned Wage Access product directly to their

employee at no cost, Maryland law does not consider it a loan subject to Subtitle 3. Additionally, if the product is truly for earned wages – i.e., the limit on what is provided is based on how much the employee has earned to date - and provided directly by the employer, it would not be an advance since the employer "owes" the employee those funds.

If a Maryland consumer receives the product from an independent third party, the arrangement's facts and circumstances must be analyzed to determine if those providers are to be deemed lenders and whether they would require a license.

**How does Maryland view Third-Party Providers?**

Earned Wage Access products provided directly by employers or provided by independent third parties are merely two ends of the spectrum on how consumers obtain these products. Maryland law requires a case-by-case analysis for those products provided by employers but through a connected third party. To determine if the third-party provider is truly a service provider to the employer – and thus not a lender – or the party providing the advance OFR will consider the following factors:

- Who bears the economic risk?

  If the consumer defaults on their repayment obligation does the third party bear the loss of the default or the employer? If the third party bears the burden, OFR will be more likely to view them as the true provider of the advance rather than the employer and thus a lender under Maryland law.

- What level of contact does the third party have with the consumer?

  If the consumer has minimal to no contact with the third-party provider, OFR is more likely to view the third party as truly a vendor/service provider to the employer. The greater the level of contact the consumer has with the third-party provider, the less the third party will appear to be merely a service provider to the employer.

- Who benefits from any fees or "tips" the consumer pays?

  If the third party receives most of the economic benefit from the transaction they are more likely to be viewed not as a service provider, but as the lender. This is particularly the case if the consumer pays the "tips" or fees directly to the third party instead of the employer.

**Are fees and "tips" permissible under Maryland law?**

Under Maryland Commercial Law §12-101(e), interest is "any compensation directly or indirectly imposed by a lender for the extension of credit for the use or forbearance of money, including any loan fee". Maryland Commercial Law §12-306 caps the amount of interest a lender may charge a consumer on a transaction.

Because a tip or fee would be compensation for an extension of credit, whether a "tip" or fee is permissible depends upon the amount and who is providing the product. If the employer provides the product directly to the employee, as noted above, it is not considered a loan under Maryland law and thus Maryland interest rate limits do not apply. However, if a third-party provides the product, it is a loan under Maryland law and the lender must adhere to Maryland interest rate limits. If the third party sets a tip default at an amount greater than zero, the consumer may feel compelled to provide a tip. In some instances, the tip would factor into the interest rate on the loan product.

**OFR Oversight**

As a new and evolving product, OFR will be monitoring the use and provision of Earned Wage Access products. OFR will pay particularly attention to the fees that providers charge consumers for the use of Earned Wage Access products. As part of its monitoring efforts, OFR is issuing an advisory to consumers about these products and is encouraging consumers to contact OFR with questions or concerns about the products that they have been offered. OFR will also be monitoring this product for any practices that are deceptive, unfair, or abusive.

If you would like to discuss the Earned Wage Access product you offer to consumers, please contact Assistant Commissioner Shereefat Balogun of the Office of Financial Regulation at 410-230-6390, or by email at shereefat.balogun@maryland.gov.

---

*The Office of Financial Regulation, a division of the Maryland Department of Labor, is Maryland's consumer financial protection agency and financial services regulator. For more information, please visit our website at www.labor.maryland.gov/finance.*



**Click here to subscribe to emails from the Office of Financial Regulation.**
Please save "md-dllr-ocfr@info.maryland.gov" in your email contacts to help prevent Office communications from being blocked by your email provider's security features.