**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| MAYOR & CITY COUNCIL OF BALTIMORE,<br>*Plaintiff*,<br>v.<br>MONEYLION TECHNOLOGIES, INC.,<br>*Defendant*. | Case No. 1:25-cv-03692-SAG |

**DEFENDANT MONEYLION TECHNOLOGIES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS MAYOR & CITY COUNCIL OF BALTIMORE'S COMPLAINT FOR CIVIL PENALTIES & INJUNCTIVE RELIEF**

Dated: October 2, 2026

Respectfully submitted,


Aaron R. Marienthal *(Admitted Pro Hac Vice)*
Alexandra S. Farley *(Admitted Pro Hac Vice)*
**MCGUIREWOODS LLP**
Two Embarcadero Center
201 Clay Street, Suite 1300
San Francisco, CA 94111
Tel.: (415) 844-9944
Fax: (415) 844-9922
amarienthal@mcguirewoods.com
afarley@mcguirewoods.com

Grace Greene Simmons
*(Admitted Pro Hac Vice)*
**MCGUIREWOODS LLP**
1075 Peachtree Street, NE
35th Floor
Atlanta, GA 30309-3900
Tel.: (404) 443-5718
Fax: (404) 443-5758
gsimmons@mcguirewoods.com

Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4432
(410) 659-4482 Fax
mmartinez@mcguirewoods.com

Jonathan Y. Ellis *(Admitted Pro Hac Vice)*
**MCGUIREWOODS LLP**
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Tel.: (919) 755-6688
Fax: (919) 755-6588
jellis@mcguirewoods.com

*Counsel for Defendant*
*MoneyLion Technologies, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
ARGUMENT ..... 2
I. Baltimore's Ordinance impermissibly makes it a co-enforcer of the State's consumer-protection laws ..... 2
A. The Ordinance is not a local law ..... 2
1. Baltimore's Ordinance is not local in substance ..... 2
2. Baltimore's Ordinance is not local in effect ..... 9
B. The Ordinance is preempted by the MCPA ..... 11
C. The Ordinance is not saved by the MCPA's saving clause ..... 13
II. Baltimore cannot create a duplicate scheme for EWA ..... 14
CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleti v. Metropolitan Baltimore, LLC*, 479 Md. 696 (2022) ....................8, 13

*Allied Vending, Inc. v. City of Bowie*, 332 Md. 279 (1993) ....................12

*Am. Fin. Servs. Ass'n v. City of Oakland*, 104 P.3d 813 (Cal. 2005) ....................14

*Am. Fin. Servs. Ass'n v. Montgomery Cnty., Md.*, No. 269105 (Mont. Cnty. Cir. Ct.) ....................14

*In re Am. States Pub. Serv. Co.*, 12 F. Supp. 667 (D. Md. 1935) ....................8

*Angel Enters. Ltd. P'ship v. Talbot Cnty.*, 474 Md. 237 (2021) ....................3, 7

*Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394 (2022) ..........1-2, 4-5, 8

*Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014) ....................5

*Bradshaw v. Lankford*, 73 Md. 428, 21 A. 66 (1891) ....................11

*City of Baltimore v. Sitnick*, 254 Md. 303 (1969) ....................5

*City of Chicago v. Marriott Int'l, Inc.*, No. 19-cv-654, 2019 WL 6829101 (D. Md. Dec. 13, 2019) ....................10

*Dasch v. Jackson*, 170 Md. 251, 183 A. 534 (1936) .................... 3-4

*Edwards Sys. Tech. v. Corbin*, 379 Md. 278 (2004) ....................9

*Engage Armament LLC v. Montgomery Cnty.*, 494 Md. 1 (2026) ....................3, 11

*Fosler v. Panoramic Design, Ltd.*, 376 Md. 118 (2003) ....................7

*Gunpowder Horse Stables, Inc. v. State Farm Auto Ins. Co.*, 108 Md. App. 612 (1996) ....................8

*Holiday Universal, Inc. v. Montgomery Cnty.*, 377 Md. 305 (2003) ....................3-4, 10-11, 14

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452 (D. Md. 2013) ....................8

*Mayor & City Council of Balt. v. B.P. P.L.C.*, 493 Md. 427 (2026) .................... 8-11

*Mayor & City Council of Balt. v. MoneyLion Techs. Inc.*, No. 25-cv-03692, 2026 WL 1532962 (D. Md. June 1, 2026) ....................2, 8

*Mayor & City Council of Balt. v. New Pulaski Co. Ltd. P'ship*, 112 Md. App. 218 (1996) ........ 12-13

*McCrory Corp. v. Fowler*, 319 Md. 12 (1990) ........ 3-5, 7-9

*Montgomery Citizens League v. Greenhalgh*, 253 Md. 151 (1969) ........ 4-5

*Norris v. Mayor & City Council of Balt.*, 172 Md. 667, 192 A. 531 (1937) ........ 4

*Rossberg v. State*, 111 Md. 394, 74 A. 581 (1909) ........ 5

*State v. Stewart*, 152 Md. 419, 137 A. 39 (1927) ........ 4

*Syndicated Publ'ns, Inc. v. Mont. Cnty., Md.*, 921 F. Supp. 1442 (D. Md. 1996) ........ 6

*Talbot Cnty. v. Skipper*, 329 Md. 481 (1993) ........ 12

*Tyma v. Montgomery Cnty.*, 369 Md. 497 (2002) ........ 3

*Wheelabrator Baltimore, L.P. v. Mayor & City Council of Balt.*, 449 F. Supp. 3d 549 (D. Md. 2020) ........ 11-12

**Statutes**

Md. Code, Com. Law § 12-1501(i) ........ 15

Md. Code, Com. Law § 12-1503(11) ........ 15

Md. Code, Com. Law § 12-1505 ........ 15

Md. Code, Com. Law Title 13 ........ 12

Md. Code, Com. Law § 13-103 ........ 13

Md. Code, Com. Law § 13-406 ........ 7

Md. Code, Com. Law § 408 ........ 7

Md. Code, Com. Law § 410(c) ........ 7

Cal. Bus. & Prof. Code § 17206(a) ........ 9, 12

Colo. Stat. § 6-1-103 ........ 9

Miss. Stat. § 75-24-21 ........ 9

N.J. Stat. § 56:8-14.1 ........ 9

Nev. Stat. § 598.0983 ........ 9

Okla. Stat. T. 15 § 756.1. ....................9
S.C. Stat. § 39-5-130....................9
Tex. Bus. Com. § 17.48 ....................9
Va. Stat. § 59.1-203(A)....................9

**Ordinances**

Balt. City Code Art. 2 § 4-1 ....................5, 8
Balt. City Code Art. 2 § 4-2 ....................6
Balt. City Code Art. 2 § 4-3 ....................6
Balt. City Code Art. 2 § 4-5(d) .................... 6-7
Balt. City Code Art. 2 § 4-7 ....................8
Balt. City Code Art. 2 § 7-4 ....................3
Balt. City Code Art. 2 § 10-2 ....................3
Balt. City Code Art. 2 § 11-2 ....................3
Balt. City Code Art. 2 § 11-3 ....................3
Balt. Ordinance No. 1 § 10A (1955)....................5
Balt. Ordinance No. 8 (1803)....................5
Balt. Ordinance No. 9 (1797)....................5
Howard Cnty. Code Title 17 ....................6
Howard Cnty. Code § 17.401(d)....................6
Howard Cnty. Code § 17.403 ....................6
Howard Cnty. Code § 17.412 ....................6
Mont. Cnty. Code Ch. 11 ....................6
Mont. Cnty. Code § 11-2 ....................6
Mont. Cnty. Code § 11-4 ....................6
Mont. Cnty. Code § 11-6A ....................14

Mont. Cnty. Code § 11-11 .......................................................................................................6

**Other Sources**

*Howard County Office of Consumer Protection*, https://perma.cc/4KXM-KY9C.........................6

5 McQuillin, *The Law of Municipal Corporations* § 15:16 (3d ed. 2026) ....................................4

5 McQuillin, *The Law of Municipal Corporations* § 15:18 (3d ed. 2026) ...............................3, 12

*Montgomery County Office of Consumer Protection*, https://perma.cc/L2LS-WR5Y ...........................................................................................................................6

Steven J. Cole, *State Enforcement Efforts Directed Against Unfair or Deceptive Practices*, 56 Antitrust L.J. 125 (1987).......................................................................7

## INTRODUCTION

Baltimore has overstepped its constitutional bounds. The City accepts that the Maryland Consumer Protection Act (MCPA) does not give localities the right to sue. And the City does not deny that it has granted itself a cause of action under the MCPA by replicating the MCPA as its own Consumer Protection Ordinance, as this Court has already recognized. That should end the inquiry: If Maryland has decided not to let localities enforce a state law, but to keep that power with the State, then a rogue municipality cannot circumvent the State's limitation by decreeing otherwise in the local code.

Baltimore insists that its copycat scheme is permissible because it has broad police powers and has regulated various aspects of consumer protection in the past. But a locality's police powers—broad as they may be—are still subject to constitutional restraints. And the Ordinance reaches well beyond the concurrent measures that Maryland localities, including Baltimore, have taken in the past. No Maryland court has sanctioned such an effort to intrude into a statewide regulatory scheme—to the contrary, the Maryland Supreme Court recently stopped another purported attempt by Baltimore to circumvent the MCPA's limitations. *See Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394, 423-27 (2022). This Court should do the same.

Even if Baltimore's Ordinance were not facially unconstitutional, it would exceed the City's constitutional authority to apply it here. Financial services, including earned wage access (EWA), are statewide products raising statewide issues that are necessarily regulated at the statewide level. Tellingly, Baltimore cannot muster a single example of it or any other Maryland municipality similarly attempting to regulate financial products and services—much less in a manner that attempts to forbid what the General Assembly expressly approved.

The Ordinance must be struck down as unconstitutional; it is not a local law, and it is preempted by the MCPA. At a minimum, the Ordinance is unconstitutional as applied here because the Maryland Consumer Loan Law (MCLL) preempts this suit. In any case, this suit cannot proceed.

**ARGUMENT**

**I. Baltimore's Ordinance Impermissibly Makes It a Co-Enforcer of the State's Consumer-Protection Laws.**

To pass constitutional muster, a local ordinance must be a truly local law, on a local subject and with local effects, and it cannot be preempted by state law. Baltimore's Consumer Protection Ordinance fails both criteria.

**A. The Ordinance is not a local law.**

*1. Baltimore's Ordinance is not local in substance.*

The Ordinance "allow[s] [Baltimore] to initiate a cause of action otherwise reserved for the State and consumers under the MCPA," as this Court has already recognized. *Mayor & City Council of Balt. v. MoneyLion Techs. Inc.*, No. 25-cv-03692, 2026 WL 1532962, at *6 n.7 (D. Md. June 1, 2026). That unilateral attempt to add the City to the MCPA is inherently a general law, not a local one. The MCPA is a state statute on an issue of statewide concern, with a careful enforcement scheme, allowing the State and consumers—but not localities—to bring a cause of action under the statute. *Assanah-Carroll*, 480 Md. at 426. The City's efforts to "modify or circumvent" the limitations "under the MCPA" by granting itself a cause of action intrude in an area "of significant interest to the entire State." *Id.*; *see* MoneyLion's Motion to Dismiss, ECF 39-1 at 10-14. Baltimore offers several arguments to try to avoid this straightforward conclusion. All fail.

*First*, the City claims that the Ordinance must be a local law, because the City has "broad powers" to legislate "for the peace, good government, health and welfare of the community." City's Opposition to Motion to Dismiss, ECF 41 at 9 (citations omitted). No doubt, Baltimore has

the general authority to act to protect its citizens and regulate businesses. *See* ECF 39-1 at 7 (acknowledging this). But "ordinances enacted pursuant to [the City's] otherwise broad authority to legislate" still must "be local laws" and must "not be inconsistent with, preempted by, or in conflict with State law." *Engage Armament LLC v. Montgomery Cnty.*, 494 Md. 1, 33 (2026); *accord Angel Enters. Ltd. P'ship v. Talbot Cnty.*, 474 Md. 237, 262 (2021). Baltimore cannot escape those constitutional limitations simply by claiming to be acting within its police powers. *Holiday Universal, Inc. v. Montgomery Cnty.*, 377 Md. 305, 317-18 (2003); *accord* 5 McQuillin, *The Law of Municipal Corporations* § 15:18 (3d ed. 2026).

*Second*, Baltimore insists (ECF 41 at 10) that "consumer protection" is a local subject appropriate for concurrent regulation. It can be: Localities can and do routinely establish local consumer-protection standards on matters of local concern. ECF 39-1 at 10, 14. But that does not mean that any consumer-protection ordinance is local. Consider Baltimore's previous attempt to license paper-hangers. *Dasch v. Jackson*, 170 Md. 251, 183 A. 534, 535 (1936). The Maryland Supreme Court struck down Baltimore's scheme because it impaired persons from engaging in a business that had not historically been regulated at the local level, but was "within the field of legislation over which the General Assembly of the state retains control." *Id.* at 537-38. In other words, Baltimore can establish licensing requirements for pawnbrokers, Balt. City Code Art. 2 §§ 11-2, 11-3, scrap collectors, *id.* § 7-4, and gas stations, *id.* § 10-2—all areas of "peculiarly local nature," *McCrory Corp. v. Fowler*, 319 Md. 12, 24 (1990), *superseded by statute*—but not demand that doctors or lawyers (or paper-hangers) obtain a special license to practice in city limits.

The inquiry is not whether "a specific business has sufficiently truly local traits," *cf.* ECF 41 at 11, but whether the "subject matter and substance" is "of local import," *Tyma v. Montgomery Cnty.*, 369 Md. 497, 507 (2002). There is therefore no risk, as the City frets (ECF 41 at 11), that

"Baltimore could enforce anti-discrimination ordinances against local landlords but not national property management companies." Housing is a recognized and traditional area of local regulation, *see Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 162 (1969), so anybody operating housing in Baltimore must comply with local ordinances.

Baltimore errs in insisting (ECF 41 at 11) that these cases provide "no workable rule" to determine whether a subject is "local or not." There may be hard cases. *Dasch*, 183 A. at 537-38. But the line is administrable, as Maryland courts have demonstrated time and again. *See, e.g.*, *Norris v. Mayor & City Council of Balt.*, 172 Md. 667, 192 A. 531, 537-38 (1937); *State v. Stewart*, 152 Md. 419, 137 A. 39, 42 (1927). A subject is general rather than local when, given the interests at stake, the subject is a matter of "state concern," based on the "traditional[]" division of authority between the State and localities and the novelty of the municipality's current regulatory effort, and the subject "calls for state-wide treatment." 5 McQuillin § 15:16; *McCrory*, 319 Md. at 17-21; *see* ECF 39-1 at 10-11. This is not "MoneyLion's proposed standard," *cf.* ECF 41 at 11—it is the law in this State. *See Holiday Universal*, 377 Md. at 316 ("Numerous opinions of this Court have set forth principles for determining whether an enactment violates the local law limitation imposed by … the Maryland Constitution.").

The standard is readily met here, ECF 39-1 at 10-11, as the Maryland Supreme Court has already established: "The Maryland Consumer Protection Act and its private and public enforcement provisions affect matters of significant interest to the entire State." *Assanah-Carroll*, 480 Md. at 426 (citations omitted). "The enforcement provisions provided under that Act apply uniformly to all consumers across the State." *Id.* No locality can "modify or circumvent the statutory remedies that uniformly apply to all consumers who are subject to a prohibited unfair, abusive, or

deceptive trade practice," *id.*, including by adding itself to the list of parties that can seek relief under the MCPA.

Baltimore claims (ECF 41 at 8) to have caselaw on its side, but it conspicuously neglects *Assanah-Carroll*. And it does not actually point to any cases holding that localities can or should be concurrent and co-equal general-purpose regulators of consumer protection (much less in the financial-services space). The smattering of cases that the City cites all involved specific substantive areas that have been recognized as proper subjects for local regulation, like establishing local minimum wage laws, *City of Baltimore v. Sitnick*, 254 Md. 303, 306 (1969); prohibiting discrimination in local housing, *Greenhalgh*, 253 Md. at 154; punishing local drug activity, *Rossberg v. State*, 111 Md. 394, 74 A. 581, 584 (1909); and regulating ticketing for local concerts, *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 429-30 (D. Md. 2014).

Nor has general-purpose consumer protection "traditionally" been deemed a local concern. *McCrory*, 319 Md. at 20; *cf.* ECF 41 at 1. Baltimore cites a handful of statutes from over 200 years ago, but these involved substantive standards for specific local products moving through the port city. For instance, in 1797, the City gave a local official the power to inspect "salted beef, pork and fish" exported and imported through Baltimore harbor and to impose penalties for mislabeled, low quality, or underpacked barrels. Balt. Ordinance No. 9 (1797), ECF 41-2. In 1803, Baltimore established a similar scheme for butter. Balt. Ordinance No. 8 (1803), ECF 41-3.

Baltimore tries to rely on the predecessor to the current Ordinance, but the difference between the two is night and day. Under the prior ordinance, it was unlawful only to advertise a product within the City in a newspaper, on television, or by handbills, "with the intent not to sell" it at that price or condition. Balt. City Code Art. 2 § 4-1 (2000); *see also* Balt. Ordinance No. 1 § 10A (1955), ECF 41-4. Violations counted as a misdemeanor and had a maximum $500 fine.

Balt. City Code Art. 2 § 4-2 (2000). The ordinance did not incorporate or reference the MCPA. It did not cover any and all possible conduct in relation to any "consumer good," "realty," or "service." Balt. City Code Art. 2, § 4-2 (2023). And it did not give the City Solicitor the right to initiate lawsuits in state or federal court, or to extract onerous penalties for the municipal coffers, or to obtain injunctive relief in areas of traditional state concern ranging from artificial intelligence to online gambling. *Id.* §§ 4-3, 4-5(d); *see* ECF 39-1 at 5 n.2, 11. The prior ordinance had nothing close to the current Ordinance's breadth, depth, or effect.

The closest that Baltimore can muster is that two of Maryland's 23 counties previously enacted general-purpose consumer-protection schemes. Mont. Cnty. Code Ch. 11; Howard Cnty. Code Title 17 Subtitle 4. These ordinances did not wholesale incorporate the MCPA, but established their own substantive standards. Mont. Cnty. Code § 11-4; Howard Cnty. Code § 17.403. And while these schemes provided for those standards to be enforced in court, including by private parties, Mont. Cnty. Code § 11-11; Howard Cnty. Code § 17.412, their primary purposes were to establish local administrative offices to investigate local violations, coordinate with state and federal agencies, and educate consumers and businesses. Mont. Cnty. Code § 11-2; Howard Cnty. Code § 17.401(d); *see Syndicated Publ'ns, Inc. v. Mont. Cnty., Md.*, 921 F. Supp. 1442, 1445 (D. Md. 1996). And that seems to have been their limited role. *See Montgomery County Office of Consumer Protection*, https://perma.cc/L2LS-WR5Y; *Howard County Office of Consumer Protection*, https://perma.cc/4KXM-KY9C. Unlike here, Montgomery and Howard Counties have not attempted to use their ordinances to intrude into areas of statewide concern requiring statewide treatment. *See* ECF 39-1 at 11.

Notably, Baltimore cites no case applying the Montgomery or Howard County ordinances (or its own prior false-advertising ordinance), much less upholding them as local laws. The most

Baltimore offers are vague remarks made by a former head of the state Office of Consumer Protection at a conference—no replacement, of course, for a reasoned court opinion. *Cf.* Steven J. Cole, *State Enforcement Efforts Directed Against Unfair or Deceptive Practices*, 56 Antitrust L.J. 125 (1987). The existence of these two untested ordinances cannot justify Baltimore's attempt.

Indeed, the Maryland Supreme Court expressed skepticism about the legality of the Montgomery County ordinance on terms nearly identical to those MoneyLion asserts here. That ordinance permits consumers to file complaints about "unfair trade practices" with the County, allows the County to investigate and try to mediate a solution, and if that fails, provides that the "County Attorney" can initiate "actions in circuit court … on behalf of the consumer." *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 124 n.2 (2003). As the Maryland Supreme Court noted, "[t]hese provisions seem to create a new circuit court cause of action, and appear to be somewhat similar to the local ordinance involved in *McCrory*," *id.*—which had been struck down as impermissibly general. The Court ultimately did not resolve the constitutionality of the statute. *Id.* But that well-founded skepticism previews the constitutional outcome here.

*Third*, Baltimore asserts (ECF 41 at 16-19) that it is no problem for the City to give itself a cause of action, because it has the inherent power to enforce its own ordinances. That doesn't work. Localities generally have the authority to impose civil fines and penalties for violations of their municipal codes. *Angel Enters. Ltd. P'ship*, 474 Md. at 261-65. Those penalties are primarily enforced through administrative proceedings or in the state district (small-claims) court. ECF 41 at 17. And localities can seek injunctive relief to require compliance with the municipal code in the district or circuit court. *Id.* at 17-18. But the Ordinance allows Baltimore to sue in state or federal court, apparently for restitution, *see* Compl. at 30(c), just as if it had a cause of action under the MCPA. Balt. City Code Art. 2 § 4-5(d); *see* Md. Code, Com. Law (CL) §§ 13-406, 408, 410(c);

*see, e.g.*, *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 456 (D. Md. 2013). And the Maryland Supreme Court has been clear that localities cannot create "new causes of action" "in the courts of the State." *McCrory*, 319 Md. at 19-20; *accord Aleti v. Metropolitan Baltimore, LLC*, 479 Md. 696, 718 (2022); *Gunpowder Horse Stables, Inc. v. State Farm Auto Ins. Co.*, 108 Md. App. 612, 633 (1996); *see* ECF 39-1 at 12.

Baltimore insists that *McCrory* and related cases are irrelevant because they involve "the creation of new causes of action or remedies for *private parties*." ECF 41 at 18 (emphasis added). But their principles are not so limited. "[C]reating a remedy which has traditionally been the sole province of the General Assembly and the Court of Appeals, to combat a statewide problem"—like consumer protection—"goes beyond a matter of purely local concern," no matter who the cause of action is for. *McCrory*, 319 Md. at 20 (citation and alteration omitted). It is just as disruptive to the MCPA to allow the City to sue under that statute as it would be to give injured consumers new remedies under the MCPA. *See Assanah-Carroll*, 480 Md. at 423-27.

Baltimore claims (ECF 41 at 19) that it is not attempting to alter the MCPA by giving itself a cause of action under the statute. But Baltimore has not even tried to hide its effort to do so. Unable to sue directly under the statute, the City copied the state statute—the "terms, definitions, and standards," *MoneyLion*, 2026 WL 1532962, at *1—and put it into a local ordinance. Balt. City Code Art. 2 §§ 4-1, 4-7; *see, e.g.*, Compl. ¶¶ 79, 81-82, 97, ECF 1-2; City's Reply in support of Remand at 8, ECF 29. This is obviously an attempt to "circumvent" the MCPA's limitations on who can sue and what remedies they can obtain. *Assanah-Carroll*, 480 Md. at 423. "[W]hat cannot be done directly… may not be accomplished indirectly." *In re Am. States Pub. Serv. Co.*, 12 F. Supp. 667, 699 (D. Md. 1935). "No amount of creative" structuring "can masquerade the fact that"

Baltimore is "attempting to utilize state law to regulate." *Mayor & City Council of Balt. v. B.P. P.L.C.*, 493 Md. 427, 482 (2026).

If Baltimore wants the ability to enforce the MCPA, it is free to seek a legislative solution in Annapolis. Several counties took that route after the Maryland Supreme Court held in *McCrory* that a county cannot create a new cause of action in the state courts to enforce local employment-discrimination standards. After that ruling, the General Assembly passed a statute permitting, in certain counties, "a person who is subjected to an act of discrimination prohibited by the county code" to bring a civil action "in the circuit court for the county in which the alleged discrimination took place." *Edwards Sys. Tech. v. Corbin*, 379 Md. 278, 292 (2004). And certain other state consumer-protection statutes explicitly permit localities to sue.[1] Unless and until Maryland joins their ranks, Baltimore cannot amend the MCPA by municipal fiat.

*2. Baltimore's Ordinance is not local in effect.*

The Ordinance is also impermissibly extraterritorial. ECF 39-1 at 14-15. Baltimore insists that its Ordinance will not regulate extraterritorially, only control conduct "in Baltimore City." ECF 41 at 1. But the City still provides no details on what that means. *Id.* at 13-14. And it refuses to answer even straightforward and inevitable applications of the statute because those examples

[1] *See* Cal. Bus. & Prof. Code § 17206(a) (permitting "civil action" for penalties by counties and cities "in any court of competent jurisdiction"); Colo. Stat. § 6-1-103 (making "[t]he attorney general and the district attorneys … concurrently responsible for … enforcement"); Miss. Stat. § 75-24-21 (allowing district and county attorneys to "prosecute actions … in the same manner as provided for the attorney general," but requiring "a full report thereon to the attorney general"); Nev. Stat. § 598.0983 (allowing district attorneys to sue but requiring that the State be first allowed to investigate and take action); N.J. Stat. § 56:8-14.1 (permitting an "action in a court of appropriate jurisdiction initiated by the director of any certified county or municipal office of consumer affairs"); Okla. Stat. T. 15 § 756.1 ("[T]he Attorney General or a district attorney may bring an action."); Tex. Bus. Com. § 17.48 ("A district or county attorney, with prior written notice to the consumer protection division, may institute and prosecute actions seeking injunctive relief under this subchapter."); Va. Stat. § 59.1-203(A) (permitting "an action to be brought in the appropriate circuit court" by "the attorney for any city, county, or town"); S.C. Stat. § 39-5-130 (permitting county and city attorneys to bring suit but requiring that they obtain "prior approval" from the Attorney General).

"are not in the Complaint." *Id*. at 15; *cf.* ECF 39-1 at 15. At most, the City offers conduct that it deems certainly covered by the Ordinance, namely "a Baltimore resident who saw a MoneyLion advertisement in Baltimore and took out an InstaCash Advance in Baltimore." ECF 41 at 15-16. But the constitutional inquiry is not whether the ordinance covers a core of domestic conduct, but "whether the ordinance is essentially limited to the territorial boundaries of the enacting jurisdiction." *Holiday Universal*, 377 Md. at 315-16. That requires delineating the outer boundaries of the ordinance—something the City refuses to do, presumably because the City intends to regulate outside its borders.

Baltimore never denies "that the ordinance could directly apply in a jurisdiction outside of" Baltimore, like if a Silver Spring resident happens to see an Instacash advertisement while passing through Baltimore City but does not request the Instacash until she reaches Towson. *Id.* at 316 (striking down ordinance that "applies to a contract fortuitously signed in Montgomery County, by parties who reside outside of Montgomery County, where *none* of the performance takes place within Montgomery County"). "The nature and scope" of the requested relief confirms that Baltimore "seek[s] to regulate conduct outside" the city. *B.P.*, 493 Md. at 483. The Complaint demands "that MoneyLion return all principal, fees, and tips to Baltimore consumers," Compl. at 30(c)—a term that could encompass anyone with a nexus to Baltimore, not merely Baltimore residents. *Cf. City of Chicago v. Marriott Int'l, Inc.*, No. 19-cv-654, 2019 WL 6829101, at *12 (D. Md. Dec. 13, 2019) (complaint explicitly limited its requested relief to "*Chicago residents*" who made reservations "*from Chicago*"). And the City seeks "[i]njunctive relief requiring that MoneyLion adequately disclose the amount financed, finance charge, annual percentage rate, and total of payments for Instacash Advances," and "requiring MoneyLion to reform its practices to accurately describe Instacash Advances"—relief not explicitly limited to Baltimore that threatens to emanate

far outside city borders. Compl. at 31(d)-(e).

Even if the Ordinance regulated conduct only within city limits, it still threatens to have significant extraterritorial "impact on persons throughout the State." *Holiday Universal*, 377 Md. at 317; *see Engage Armament*, 494 Md. at 67. Baltimore never denies (ECF 41 at 15-16) that this suit and its requested relief—onerous civil penalties and injunctive relief as to advertising and terms and conditions—could impair the availability of Instacash for citizens across the State. *See Bradshaw v. Lankford*, 73 Md. 428, 21 A. 66, 67 (1891) (striking down ordinance that "deprive[d] the people of the entire state of" their right to dredge oysters).

The point of this suit, filed the same day that Maryland *sanctioned* EWA, seems to be to drive EWA out of the State. *See, e.g.*, Compl. ¶ 88 (complaining that Instacash is "contrary to the public policy of the State of Maryland"). Baltimore instead insists (ECF 41 at 15) that these extra-territorial impacts cannot be resolved at this stage. But discovery cannot proceed on a cause of action arising under an unconstitutional ordinance. *See, e.g.*, *B.P.*, 493 Md. at 479-485 (dismissing localities' claims at motion-to-dismiss stage based on their efforts to regulate "beyond their respective borders").

**B. The Ordinance is preempted by the MCPA.**

Even if the Ordinance were local, it would be preempted by the MCPA in two different ways. For one, the Ordinance is conflict preempted. Baltimore insists that there can be no conflict, as "the substantive standards are identical between the" two schemes. ECF 41 at 20. But the Ordinance gives the City a right to sue under the MCPA that the State intended to prohibit, and different remedies than the State has allowed. *Wheelabrator Baltimore, L.P. v. Mayor & City Council of Balt.*, 449 F. Supp. 3d 549, 560-61 (D. Md. 2020); *see* ECF 39-1 at 15-16. That procedural and remedial conflict is just as fatal to the Ordinance as a substantive conflict would be. *See, e.g.*,

*Talbot Cnty. v. Skipper*, 329 Md. 481, 483-84 (1993) (preempting local ordinance requiring that state permits be recorded with county planning office). "[L]ocal governments lack the authority to craft their own exceptions to general state laws" limiting who can sue and what they can recover. 5 McQuillin § 15:18. And "[a] local law may conflict with a state law even where the local law purports to strengthen the state standard" by adding new potential enforcers. *Wheelabrator*, 449 F. Supp. 3d at 562. Maryland has chosen not to add localities to the list of potential plaintiffs under the MCPA, *cf.* Cal. Bus. & Prof. Code § 17206(a), and that decision cannot be "second guess[ed]" by Baltimore, *Wheelabrator*, 449 F. Supp. 3d at 561.

The Ordinance is also impliedly preempted. The MCPA occupies the field of general-purpose consumer protection, and the State has made clear that it is the sole enforcer in this space. ECF 39-1 at 16. The MCPA is "an all-encompassing state scheme." *Talbot Cnty.,* 329 Md. at 491; *see* Md. CL Title 13. Local laws regulated aspects of consumer protection before the MCPA's enactment in 1970, but none looked like Baltimore's replica. *See supra* pp. 5-7. And no Maryland municipality has ever meaningfully tried to use a general-purpose consumer-protection scheme to turn itself into a sidekick of the State, as Baltimore has done. *See* ECF 39-1 at 11 (collecting Baltimore's suits).

Dueling state and local regulators would cause "chaos and confusion," especially if other jurisdictions now follow Baltimore's lead and "enact similar ordinances." *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 299, 303 (1993). This suit is the perfect example: The day that Maryland's new EWA law went into effect, Baltimore sued, attempting to "establish[] a veto over" the "State'[s] decision[] to permit" EWA. *Mayor & City Council of Balt. v. New Pulaski Co. Ltd. P'ship*, 112 Md. App. 218, 232 (1996); *see Allied Vending*, 332 Md. at 302 (preempting ordinances enacted by localities that "obviously fel[t] the [state] legislation did not go far enough" to remedy

the perceived problem). This whiplash, if permitted, "would cause confusion and frustrate State policy." *New Pulaski*, 112 Md. App. at 232.

### C. The Ordinance is not saved by the MCPA's saving clause.

Baltimore argues that the saving clause "explicitly encourages Maryland localities to pass local consumer protection laws," and therefore establishes that the Ordinance is both local and not preempted. ECF 41 at 13, 20. But that argument misreads the clause. The clause does not overcome either constitutional barrier. ECF 39-1 at 16–18.

The MCPA never "explicitly encourages and authorizes the" Ordinance. ECF 41 at 19. Under the saving clause, "[a] county, Baltimore City, municipality, or agency of either may adopt, within the scope of its authority, more stringent provisions not inconsistent with the provisions of" the MCPA. Md. CL § 13-103. That word choice is telling: Localities may adopt "more stringent provisions"—meaning more protective substantive standards—"within the scope of [their] authority," that is, on issues of local import and with local effect. *Id.* For instance, municipalities can adopt local housing ordinances, requiring landlords to hold a license before renting a unit, and those ordinances—a specific substantive standard in area of recognized local authority—are not preempted. *Aleti*, 479 Md. at 707-12. Cities can enforce those standards through administrative proceedings or in local courts, *id.* at 710, and tenants can even sue under the MCPA if their landlord violates those local standards, *id.* at 719. But the Ordinance here does not adopt "more stringent provisions"—it copies the MCPA's substantive standards wholesale, and then adds a new party to enforce them. It is by no means "absurd" for the State to allow localities to establish local substantive standards that they could have adopted even if the MCPA never existed, but not to add themselves as an enforcer of the MCPA's statewide enforcement regime. ECF 41 at 20.

Even if the saving clause could be read as broadly as the City wants—it cannot—that still does not help Baltimore. No *statute* can excuse a locality from the *constitutional* limitation that ordinances must be on local subjects and have only local effects, as *Holiday Universal* made clear. 377 Md. at 318-19. In other words, even if "the General Assembly expressly invited local consumer protection legislation and enforcement," it still could not authorize the current Ordinance. *Id.* The City does nothing (ECF 41 at 8-19) to grapple with that straightforward restriction.

## II. Baltimore Cannot Create a Duplicate Scheme for EWA.

The Ordinance itself should be struck down. But at a minimum, this lawsuit must be dismissed because it is impliedly preempted by the MCLL. To be clear, MoneyLion is not suggesting that the MCLL preempts the MCPA, another state statute, or even the Ordinance as a whole. *Cf.* ECF 41 at 23-24. Instead, the MCLL preempts the local standards that the City is attempting to impose on EWA through this suit.

The MCLL occupies the field for consumer-financial products. The State has long been the sole regulator of financial products. ECF 39-1 at 18-21. Tellingly, Baltimore cannot point (ECF 41 at 24-27) to any other instance of it regulating financial products. The one time that a Maryland municipality apparently tried to do so, by regulating "discriminatory, predatory, or abusive lending practices," Mont. Cnty. Code § 11-6A, the state circuit court struck the statute down, explaining that mortgages are a "national … business," not a local one. *Am. Fin. Servs. Ass'n v. Montgomery Cnty., Md.*, No. 269105 (Mont. Cnty. Cir. Ct.), op. at 16-17, 25; *see* Montgomery Cnty. Bill No. 36-04 (2005). That is in line with what other state courts have done. *See, e.g.*, *Am. Fin. Servs. Ass'n v. City of Oakland*, 104 P.3d 813, 823-24 (Cal. 2005).

MoneyLion is not "chang[ing] its position" by saying that the MCLL occupies the field. ECF 41 at 24; *see* ECF 39-1 at 19 n.5. A statute can be "comprehensive" and indicate an intent to

preempt the field without being sufficiently "complex" to warrant *Burford* abstention; these are two fundamentally different inquiries. It is, instead, the City that has flip flopped: It represented earlier that the MCLL is not only sufficiently "complex" to warrant abstention, but that it "establishes an intricate and *comprehensive* administrative scheme that regulates consumer loans in Maryland." ECF 29 at 2 (emphasis added). Baltimore now backtracks, asserting that "[t]he MCLL is *not* comprehensive." ECF 41 at 23 (emphasis added); *accord id.* at 24. The City "cannot … have it both ways." *Id.* at 25.

Even if Baltimore could have a role to play in the consumer-financial space, its current efforts are not consistent with the MCLL. *Cf.* ECF 41 at 24. Maryland has sanctioned EWA products in the State—and issued licenses to EWA providers—on the very terms that Baltimore now insists are usurious. For example, Baltimore claims that fees are "interest." Compl. ¶ 85. The MCLL explicitly excludes them from interest. CL § 12-1501(i). Baltimore faults EWA providers for charging expedited delivery fees. Compl. ¶ 34. The MCLL allows such fees up to $7.50. CL § 12-1505. Baltimore complains that automatic repayment traps consumers in debt. Compl. ¶¶ 26-27. The MCLL sanctions such electronic funds transfers. CL § 12-1503(11).

Baltimore insists (ECF 41 at 27) that it is not trying to "effectively ban EWA in Maryland or Baltimore." Nonsense. Maryland has approved EWA. The City seeks to punish it. Baltimore may disapprove of EWA as a policy matter. But it cannot veto the State's approval by claiming that the defining features of this product, sanctioned and regulated by the State, are inherently unfair and deceptive.

## CONCLUSION

For the foregoing reasons, MoneyLion respectfully requests that the Court dismiss the City's Complaint with prejudice and grant any further relief the Court deems just and proper.

Dated: October 2, 2026

Respectfully submitted,

/s/ *Melissa O. Martinez*
Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
Telephone: (410) 659-4432
Fax: (410) 659-4482
mmartinez@mcguirewoods.com

*Counsel for Defendant*
*MoneyLion Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 2, 2026, a copy of the foregoing Defendant MoneyLion Technologies, Inc.'s Reply in Support of Motion to Dismiss was filed and served via the Court's CM/ECF on all counsel of record.

*/s/ Melissa O. Martinez*
Melissa O. Martinez